**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | Criminal No. 1:07cr00006 |
| | ) | <u>**REPORT AND**</u> |
| | ) | <u>**RECOMMENDATION**</u> |
| **SCOTTY LEE CARRICO,** | ) | |
| Defendant | ) | By: **PAMELA MEADE SARGENT** |
| | ) | **United States Magistrate Judge** |

*I. Background*

This case is before the court on the motion of the defendant, Scotty Lee Carrico, to suppress evidence, (Docket Item No. 27), ("the Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motion on April 9, 2007. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*II. Facts*

Carrico has been charged with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and one count of use or possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Greg Johnson, a National Park Service law enforcement ranger assigned to the Blue Ridge Parkway, testified that he stopped a vehicle driven by Carrico at approximately 3:17 p.m. on February 4, 2007. Johnson

-1-

testified that he observed the vehicle as it was exiting the Parkway onto State Route 52 near Fancy Gap, Virginia. Johnson stated that, as the vehicle passed his vehicle, he saw what appeared to be a bow and arrows in the back seat of the vehicle. Johnson stated that he then stopped the vehicle based on his belief that the vehicle contained a weapon, in violation of federal regulations prohibiting the possession of a weapon on the Parkway.

Johnson conceded that Carrico was not free to leave the scene at any point after he initiated the stop of Carrico's vehicle. Johnson stated that he asked Carrico if the vehicle contained any other weapons and Carrico stated that it did not. Johnson then asked Carrico to step out of the vehicle so that he could search the vehicle for weapons. Johnson testified that Carrico then told him that there was a pistol on the front passenger seat concealed under a shirt. Johnson stated that Carrico's statement regarding the location of the firearm was a spontaneous statement and was not made in response to any additional question posed to Carrico by Johnson.

Johnson stated that, as Carrico advised him of the location of the firearm, Carrico reached toward the firearm. Johnson ordered Carrico not to touch the firearm and to exit the vehicle. Johnson stated that, after Carrico stepped out of the vehicle, he patted Carrico down and took a set of brass knuckles and a large ring of keys from Carrico's pants pockets before placing Carrico in handcuffs and placing him in the back seat of Johnson's vehicle. Johnson stated that he told Carrico that he was not under arrest, but was simply being detained while Johnson searched his vehicle for other weapons. Johnson stated that he told Carrico that, if the search of his vehicle did not turn up any other contraband, he would be written a violation notice to appear in

court on the weapons possession charge and released.

After placing Carrico in the back seat of his vehicle, Johnson stated that he returned to Carrico's vehicle and took possession of a .380-caliber pistol that he found in the front passenger's side seat under a shirt. Johnson stated that the pistol did have a loaded magazine in it, but that there was not a round of ammunition in the firing chamber. Johnson stated that he also found a green bag between the driver's seat and a center console. Johnson stated that when he opened the bag to search for weapons he discovered more than $18,000.00 in cash in the bag. Johnson stated that he also opened the trunk of the vehicle to search for additional weapons and found several items in the trunk, including several bags and a locked pistol box. Johnson stated that he saw no openly visible weapons and did not search any of the containers he found in the trunk at that time.

Johnson stated that he then contacted an Assistant United States Attorney by telephone regarding the large sum of cash he had found in Carrico's vehicle. Johnson stated that he also requested that a local officer with a drug dog be dispatched to the scene. Johnson then advised Carrico of his Miranda rights and asked Carrico about the large sum of money he had found in Carrico's vehicle. Johnson stated that Carrico told him that the money was paid to him recently by a number of people for performing repairs on their vehicles.

Johnson stated that the officer with the drug dog arrived within an hour of his initial stop of Carrico. Johnson stated that the officer walked the drug dog around the outside of Carrico's vehicle and that, if the dog alerted on the outside of the vehicle,

-3-

Case 1:07-cr-00006-JPJ-PMS   Document 38   Filed 04/10/07   Page 3 of 12   Pageid#: 69

it was not apparent to Johnson. Johnson stated that the dog then jumped inside the vehicle through the driver's open window and alerted on the back seat area. Johnson stated that he was familiar enough with drug dog behavior to determine that the dog had alerted on the back seat area of the vehicle. He also stated that the officer handling the dog confirmed that the dog had alerted on this area. Johnson testified that he could not determine whether the dog instinctively jumped into the open window or whether the handler encouraged the dog to enter the vehicle. A review of a videotape of the traffic stop that was submitted into evidence does not reveal whether the dog jumped into the vehicle of its own accord or at the prompting of its handler. The videotape does reveal that after the dog jumped in through the open window, the dog's handler then brought the dog out of the vehicle twice, once opening the driver's side rear door to allow the dog to enter the back seat and once opening the passenger's side rear door to allow the dog to enter the back seat. There is no evidence before the court as to whether the dog alerted on the back seat area when it first jumped into the vehicle or only after the handler opened the doors and allowed the dog to return to the back seat area of the vehicle.

Johnson stated that the officers then searched the vehicle and found a glass pipe encrusted with brown residue in the glove box of the car's interior. Johnson stated that he also opened the pistol box located in the trunk of the car and he found that it contained a large amount of what appeared to be methamphetamine separated into six packets, along with a set of digital scales, plastic bags and rubber bands. Officers also located a box of glass pipes, which appeared to be unused, in the trunk of the vehicle. Johnson stated that he then placed Carrico under arrest and impounded his vehicle.

-4-

Case 1:07-cr-00006-JPJ-PMS   Document 38   Filed 04/10/07   Page 4 of 12   Pageid#: 70

*III. Analysis*

In the Motion, Carrico argues that the court should suppress all evidence seized by law enforcement officers during the February 4, 2007, search of his vehicle, including the firearm, the more than $18,000.00 in cash and the suspected methamphetamine. Carrico also argues that any statements that he made to the officers on this date also should be suppressed. Carrico argues that the evidence should be suppressed because it was gathered in violation of the Fourth Amendment's prohibition against unreasonable search and seizure. *See* U. S. CONST. AMEND. IV. Carrico argues that his statements should be suppressed because they were made in response to a custodial interrogation prior to him being advised of his *Miranda* rights in violation of this Fifth Amendment right against self-incrimination. *See* U. S. CONST. AMEND. V; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

I will first address Carrico's motion to suppress his statements. The Fifth Amendment guarantees that no one shall be compelled "to be a witness against himself" without the protections of due process. U.S. CONST. AMEND. V. The United States Supreme Court has held that the Constitution requires that certain warnings be given to a person before he may be interrogated while in custody. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000). These so-called "*Miranda* warnings" or "*Miranda* rights" include:

> [T]hat he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda*, 384 U.S. at 444. The Court has further held that, if such warnings are not

-5-

provided, a defendant's statements resulting from a custodial interrogation may not be used in the prosecution's case in chief. *See Dickerson*, 530 U.S. at 443-44. Once advised of these rights, however, a person is free to waive these rights and voluntarily submit to interrogation. Also, "waiver of the right to counsel and the right not to incriminate oneself need not be explicit, but may be inferred from all of the circumstances." *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984) (citing *North Carolina v. Butler*, 441 U.S. 369 (1979)). Furthermore, a statement given following *Miranda* warnings rarely will be deemed involuntary. *See Dickerson*, 530 U.S. at 444 (citing *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)).

For purposes of *Miranda*, custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer*, 468 U.S. at 428. A person is "in custody" if he "has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'" *United States v. Leshuk*, 65 F.3d 1105, 108 (4th Cir. 1995) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). In *Berkemer*, the Supreme Court noted that a traffic stop "significantly curtails the 'freedom of action' of the driver and the passengers." *Berkemer*, 468 U.S. at 436. However, the Court went on to hold that persons temporarily detained pursuant to ordinary traffic stops are not 'in custody' for the purposes of *Miranda*. *Berkemer,* 468 U.S. at 440-41.

In this case, the only incriminating statement made by Carrico was his

-6-

admission that there was a firearm concealed on the front passenger side seat of his vehicle. The undisputed facts show that this statement was not made in response to questioning by Johnson, but rather was made spontaneously in response to Johnson's instruction for Carrico to step out of the vehicle so that he could search for other weapons. While Carrico was not free to leave at this point, this statement was made while he was being temporarily detained for an ordinary traffic stop and, therefore, he was not "in custody" for purposes of *Miranda.* Based on these reasons, I find that Carrico's motion to suppress his statement should be denied.

I also find that Carrico's motion to suppress the evidence gathered from the search of his vehicle should be denied. The Fourth Amendment protects "against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Nonetheless, a brief, investigatory, warrantless stop of a car is permissible if an officer has reasonable suspicion, based on specific and articulable facts, that the car's occupants have committed a crime. *See Terry v. Ohio,* 392 U.S. 1, 10 (1968); *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir. 1992). If the investigatory stop is reasonably related in scope to the circumstances which justified the interference, the stop is constitutionally permissible. *See United States v. Sharpe,* 470 U.S. 675, 682 (1985).

Furthermore, exigent circumstances permit a warrantless search when probable cause to search exists and officers reasonably believe that contraband or other evidence may be destroyed or removed before a search warrant can be obtained. *See Mincey v. Arizona*, 437 U.S. 385, 392-94 (1978); *see also United States v. Taylor*, 90 F.3d 903, 907 (4th Cir. 1996); *United States v. Turner*, 650 F.2d 526, 528 (4th Cir.

1981). Also, exigent circumstances are presumed present and a warrantless search of a "readily mobile" automobile is permissible if probable cause exists to believe that it contains contraband or evidence of a crime. *See Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *United States v. Carter*, 300 F.3d 415, 421-22 (4th Cir. 2002). Assuming probable cause to search a vehicle, law enforcement officers also may conduct a warantless search of any containers or compartments found in the vehicle. *See Wyoming v. Houghton,* 526 U.S. 295 (1995); *California v. Acevedo*, 500 U.S. 565 (1991). Moreover, probable cause has been defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In this case, Johnson testified that he stopped Carrico's vehicle only after he saw that it contained what appeared to be a bow and arrows in violation of federal regulations prohibiting the possession of weapons on the Parkway. Thus, when Johnson initiated the stop of Carrico's vehicle, he not only possessed a reasonable and articulable suspicion of unlawful conduct, he had probable cause to believe that Carrico's vehicle possessed a weapon, which was both contraband and evidence of a crime. After stopping the vehicle, Johnson lawfully requested that Carrico exit the vehicle. Before exiting the vehicle, Carrico advised Johnson that the vehicle contained a firearm, additional evidence establishing probable cause to believe that the vehicle contained a weapon. That being the case, I find that Johnson, at this point, had probable cause to search Carrico's vehicle to take custody of these and any other weapons contained in the vehicle. Having probable cause to search the vehicle, Johnson also had probable cause to search any containers found inside the vehicle which might contain a weapon, including the pistol box located in the trunk of the

vehicle in which the suspected methamphetamine was found and the green bag in which the $18,000.00 was found.

The facts that Johnson called for the assistance of a drug dog, that the drug dog did not alert on the outside of the vehicle and that Johnson delayed continuing his search of the vehicle until after the arrival of the drug dog do not diminish the probable cause Johnson had to search Carrico's vehicle for weapons prior to the arrival of the drug dog on the scene. That being the case, I specifically do not address the propriety of allowing the drug dog to enter the vehicle when Johnson did not have probable cause to believe that Carrico's vehicle contained any illegal drugs. *See United States v. Thomas*, 787 F.Supp. 663, 684 (E.D. Tex. 1992) (just as a law enforcement officer cannot search the interior of an automobile without probable cause, a drug dog may not enter the trunk or passenger compartment of an automobile without probable cause). *See also United States v. Stone*, 866 F.2d 359, 363-64 (10th Cir. 1989) (drug dog's instinctive reaction in jumping into open hatchback during sweep of exterior of vehicle did not violate Fourth Amendment); *United States v. Hutchinson*, 471 F.Supp.2d 497, 510 (M.D. Pa. 2007) (drug dog sniff of interior of vehicle not a search under the Fourth Amendment when handler did not encourage or assist dog's entry into the vehicle); *United States v. Watson*, 783 F.Supp.2d 258, 265 (E.D. Va. 1992) (drug dog's entry through open vehicle passenger door not a violation of Fourth Amendment where there was no evidence that handler encouraged dog to enter vehicle). *But see Illinois v. Caballes*, 543 U.S. 405, 410 (2005) ("The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car. A dog sniff conducted during a

concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.").

# PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. When Ranger Johnson stopped the vehicle driven by Carrico on February 4, 2007, as it exited the Blue Ridge Parkway, Carrico was not free to leave the scene at any time prior to his arrest;

2. Nonetheless, Carrico, who was temporarily detained by Johnson pursuant to an ordinary traffic stop, was not "in custody" for purposes of *Miranda* until he was placed under arrest;

3. Carrico's statement that there was a firearm in his vehicle was not made in response to questioning by Johnson, but rather was made spontaneously in response to Johnson's instruction to exit the vehicle so that he could search it for weapons;

4. Therefore, Carrico's statement was not in response to a custodial interrogation for purposes of *Miranda* and use of the statement at trial will not violate Carrico's Fifth Amendment right against incrimination;

5. When Johnson stopped the vehicle driven by Carrico, Johnson had

probable cause to believe that the vehicle contained a weapon; and

6. Since Johnson had probable cause to believe that Carrico's vehicle contained a weapon, Johnson's warrantless search of the vehicle and the containers found in the vehicle did not violate Carrico's Fourth Amendment right to be free from unreasonable searches.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or

-11-

recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 10th day of April 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE